# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

DELORIS A. KLUSMEIER,       )
      )
      **Plaintiff,**       )
      )
v.       )       **No. 3:16-cv-00039**
      )       **REEVES/SHIRLEY**
NANCY A. BERRYHILL,[1]       )
**Acting Commissioner of Social Security,**       )
      )
      **Defendant.**       )

## MEMORANDUM OPINION

This case is before the Court on the Plaintiff's Motion for Judgment on the Pleadings and Memorandum in Support [Docs. 19 and 20] and the Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 21 and 22]. Deloris A. Klusmeier ("the Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), and the final decision of the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

On February 29, 2012, the Plaintiff filed an application for supplemental security income ("SSI"), claiming a period of disability which began March 1, 2000. [Tr. 151-56]. After her application was denied initially and upon reconsideration, the Plaintiff requested a hearing. [Tr. 95]. On April 28, 2014, a hearing was held before an ALJ to review determination of Plaintiff's claim. [Tr. 37-59]. On August 11, 2014, the ALJ found that the Plaintiff was not disabled. [Tr. 8-34]. The Appeals Council denied the Plaintiff's request for review [Tr. 1-6]; thus, the decision of the ALJ became the final decision of the Commissioner.

---

[1] During the pendency of this case, Nancy A. Berryhill replaced Acting Commissioner Carolyn W. Colvin. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted as the Defendant in this case.

Having exhausted her administrative remedies, the Plaintiff filed a Complaint with this Court on January 20, 2016, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## I.    ALJ FINDINGS

The ALJ made the following findings:

> 1.  The claimant has not engaged in substantial gainful activity since February 29, 2012, the application date (20 CFR 416.971 et seq.).
>
> 2.    The claimant has the following severe impairments: osteoarthritis; degenerative disc disease (DDD); morbid obesity; dysthymic disorder; post-traumatic stress disorder (PTSD); social phobia; and rule out borderline intellectual functioning (BIF) (20 CFR 416.920(c)).
>
> 3.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b). The claimant can lift and carry, push and pull 20 pounds occasionally and 10 pounds frequently, with the exception of occasional pushing and pulling with the right lower extremity. With normal breaks in an eight-hour day, she can sit for six hours, and stand and/or walk for six hours; can occasionally climb ladders, ropes, and scaffolds; can frequently climb ramps and stairs; and can frequently balance, stoop, kneel, crouch, and crawl. The claimant's far acuity is limited to gross vision, meaning that objects 20 feet away can be blurry. The claimant can understand and remember for one to three step tasks, can maintain attention and concentration for at least two hour periods; cannot work in a public setting, can sustain superficial interaction with her peers; and can adapt to gradual change.
>
> 5.  The claimant has no past relevant work (20 CFR 416.965).
>
> 6.  The claimant was born on June 22, 1971 and was 40 years old,

which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.  The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8.  Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968)

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10.  The claimant has not been under a disability, as defined in the Social Security Act, since February 29, 2012, the date the application was filed (20 CFR 416.920(g)).

[Tr. 13-28].

## II.   DISABILITY ELIGIBILITY

This case involves an application for SSI benefits.  To qualify for SSI benefits, an individual must file an application and be an "eligible individual" as defined in the Act.  42 U.S.C. § 1382(a); 20 C.F.R. § 416.202.  An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability.  See 42 U.S.C. § 1382(a).

"Disability" is "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a).

A claimant will only be considered disabled if:

his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

3

national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B); <u>see also</u> 20 C.F.R. § 416.905(a).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

<u>Walters v. Comm'r of Soc. Sec.</u>, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

Plaintiff bears the burden of proof at the first four steps. <u>Id.</u> The burden shifts to the Commissioner

at step five. <u>Id.</u> At the fifth step, the Commissioner must prove that there is work available in the

national economy that the claimant could perform. <u>Her v. Comm'r of Soc. Sec.</u>, 203 F.3d 388,

391 (6th Cir. 1999) (citing <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 (1987)).


## III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled

pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the

4

correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)).  If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. 42 U.S.C. § 405(g); Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994) (citing Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981)) (internal citations omitted).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently.  Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986).  The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference."  Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility."  Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984) (citing Myers v. Richardson, 471 F.2d 1265 (6th Cir. 1972)).

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner.  See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004).

5

On review, the plaintiff "bears the burden of proving his entitlement to benefits." <u>Boyes</u> <u>v. Sec'y. of Health & Human Servs.</u>, 46 F.3d 510, 512 (6th Cir. 1994) (citing <u>Halsey v. Richardson</u>, 441 F.2d 1230 (6th Cir. 1971)).

## IV.    POSITIONS OF THE PARTIES

On appeal, the Plaintiff argues that the ALJ did not properly apply the treating physician rule, 20 C.F.R. § 416.927(c)(2), to the opinion of John McElligott, M.D., because the ALJ did not assess the opinion for controlling weight.  [Doc. 20 at 8-15].  In addition, the Plaintiff asserts that the ALJ's residual functional capacity ("RFC") determination is not supported by substantial evidence, because the ALJ purported to adopt the standing and walking limitations assessed by consultative examiner Jeffery Summers, M.D., but did not incorporate the limitation into the Plaintiff's RFC.  [<u>Id.</u> at 16-18].  Lastly, the Plaintiff submits that the ALJ erred by not adequately explaining why one marked limitation – the ability to adapt to ordinary work situations and routine changes in the workplace – assessed by consultative examiner Ellen Denny, Ph.D., was rejected. [<u>Id.</u> at 18-21].

The Commissioner responds that the ALJ properly addressed and weighed Dr. McElligott's opinion, and the ALJ gave multiple "good reasons" for assigning the opinion less than controlling weight as required by the regulations.  [Doc. 22 at 7-14].  The Commissioner also maintains that the Plaintiff is mistaken with regard to Dr. Summers's opinion as the RFC includes the standing and walking limitations he assessed.  [<u>Id.</u> at 17-18].  Finally, the Commissioner contends that substantial evidence supports the ALJ's decision to reject Dr. Denny's marked limitation but that the ALJ nonetheless accommodated the restriction by limiting the Plaintiff to gradual changes. [<u>Id.</u> at 18-21].

6

The Plaintiff filed a reply, arguing that the ALJ's failure to assess Dr. McElligott's opinion for controlling weight precludes the ALJ from fulfilling the "good reason" requirement mandated by the treating physician rule. [Doc. 23 at 1-3]. The Plaintiff also submits that Dr. Summers's opinion that the Plaintiff could only stand for four hours conflicts with the requirements of light work as well as the ALJ's RFC determination which limits the Plaintiff to standing and/or walking for six hours. [Id. at 3-4]. Moreover, the Plaintiff maintains that limiting the Plaintiff to gradual changes does not accommodate a substantial loss in the ability to respond appropriately to usual work situations or changes in a routine setting. [Id. at 4-5].

## V. ANALYSIS

The Court will address the Plaintiff's allegations of error in turn.

### A. Treating Physician John McElligott, M.D.

The Plaintiff contends that the ALJ did not properly assess Dr. McElligott's opinion pursuant to the treating physician rule.

Dr. McElligott examined the Plaintiff on four separate occasions beginning on July 18, 2011. [Tr. 795-807]. At that time, the Plaintiff complained of moderate pain in her lumbar spine, knees, and ankles, as well as lower extremity edema and swelling, anxiety, depression, and post-traumatic stress disorder. [Tr. 804-05]. Upon examination, the Plaintiff demonstrated Bells Palsy right with tearing of the right eye, degenerative joint disease of both knees and ankles with instability of compartment ligament testing, and decreased breath sounds bilaterally. [Tr. 806]. In addition, the Plaintiff appeared angry and depressed. [Id.]. The Plaintiff was diagnosed with degenerative joint disease of the knees and ankles, idiopathic low back pain, hypertension, hyperthyroid, Bell's Palsy, obesity, sleep apnea, and bradycardia. [Id.].

7

The Plaintiff returned for follow-up visits on August 17, 2011, September 6, 2011, and November 3, 2011. [Tr.795-803]. Treatment notes from each visit reflect that "[t]he examination, as compared to previous visit/s has not changed." [Tr. 796, 799, 802]. During the September 6, 2011 examination, Dr. McElligott reviewed an MRI of an ACL tear of the right knee which confirmed the Plaintiff's joint and spine complaints. [Tr. 799-800]. During the last examination on November 3, 2011, Dr. McElligott opined that due to the Plaintiff's diagnoses, "he/she must stand less than 2 hours as part of an 8 hour work day. Due to the patient's physical and/or psychiatric condition, the patient is unable to complete an 8hr. work day without interruption." [Tr. 797]. In addition, Dr. McElligott found that the Plaintiff had been disabled since 2010. [Id.].

In the disability determination, after summarizing the diagnoses and limitations assessed by Dr. McElligott, the ALJ assigned the opinion "limited weight." [Tr. 21]. Citing to the length of the treating relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability and consistency of the opinion, as well as the specialization of Dr. McElligott, the ALJ provided specific reasons as to why each factor weighed in favor of assigning no more than limited weight to the opinion. [Tr. 22-23].

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) is not inconsistent with the other substantial evidence in the case record, it must be given "controlling weight." 20 C.F.R.§ 416.927(c)(2). When an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors

8

which tend to support or contradict the opinion.  Id.

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision.  Id.  A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight."  Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (July 2, 1996).

Relying on the Sixth Circuit Court of Appeal's opinion in Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 376-77 (6th Cir. 2013), the Plaintiff argues that 20 C.F.R. § 416.927(c)(2) articulates a distinct two-step evaluation process for weighing a treating source's opinion and that the ALJ failed to comply with the first step.  [Doc. 20 at 8-9].  The Plaintiff submits that first, the ALJ must determine whether the treating physician's opinion deserves controlling weight by articulating whether the opinion is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) not inconsistent with the other substantial evidence in the case record.  [Id. at 9-10].  Only if the ALJ finds that the opinion is not due controlling weight, does the ALJ move to the second step which requires consideration of the regulatory balancing factors to determine the appropriate weight the opinion deserves.  [Id.].  The Plaintiff submits that the ALJ shortcuts the process by bypassing the first step altogether.

The Commissioner responds that articulation of such a two-step evaluation process is not required by the regulations.  [Doc. 22 at 9].  The Commissioner argues that the regulations require that the ALJ give "good reasons" in his decision for the weight assigned and that the ALJ did just that in this case.  [Id. at 9-10].  The Commissioner posits that Gayheart did not mandate a two-step

9

evaluation process, and that the Sixth Circuit found error in that case because the ALJ failed to provide "good reasons" for discounting the treating physician's opinion which is the opposite of what occurred in the present matter.  [Id. at 11-12].

The Court finds the Sixth Circuit's decision in Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 545 (6th Cir. 2004) instructive.  In Wilson, the Court found that the ALJ did not give "good reason" for dismissing the treating source's opinion, in part, because there was no mention whether the treating source's opinion was entitled to controlling weight.  The Court held:

> In particular, *the ALJ failed to clarify whether DeWys's opinion was not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or was "inconsistent with the other substantial evidence in [the] case record," 20 C.F.R. § 404.1527(d)(2), did not identify the evidence supporting such a finding*, and did not explain its application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight given to DeWys's opinion.  Reversal is therefore required.

378 F.3d at 546 (emphasis added).  Thus, Wilson suggests that the ALJ should have provided some discussion whether the treating source's opinion met the controlling-weight test and identify the evidence that supported the ALJ's finding.

In Gayheart, the Sixth Circuit further clarified application of the controlling-weight test and the importance of the "good reason" requirement.  The Court explicitly concluded that the ALJ did not provide "good reason" for why the treating source's opinions were not well-supported by objective findings and were not consistent with other substantial evidence – the requisite criteria for controlling weight.  710 F.3d at 376.  In support of its finding that the ALJ should have, but did not, provide any discussion of the controlling-weight test, the Court stated:

> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports.  But these factors are properly applied only *after* the

10

> ALJ has determined that a treating-source opinion will not be given controlling weight.

Id. (emphasis added). The Court observed that the ALJ did not sufficiently explain why the treating source's opinions were not well-supported by objective evidence, nor did the ALJ identify the substantial evidence that was inconsistent with the opinions. Id. at 377. Although "the ALJ provided a modicum of reasoning" for ultimately assigning the treating source's opinions little weight, the Court found that these reasons were relevant to how the "opinions should be weighed *after* determining that they were not controlling." Id. (emphasis in the original).

Thus, in light of Sixth Circuit jurisprudence, the Court finds that the regulations require an ALJ to first articulate whether, and why, a treating source's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, *i.e.*, the controlling-weight test, and, second, to the extent the treating source's opinion is not entitled to controlling weight, the ALJ must then weigh the regulations' balancing factors – the length of the treatment relationship and the frequency of the examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, the specialization of the source, and any other factors which tend to support or contradict the opinion – to determine the amount of weight the opinion deserves. See Cummings v. Comm'r of Soc. Sec., No. 3:11-CV-614, 2013 WL 1192817, at *5 (E.D. Tenn. Mar. 22, 2013) (CJ. Varlan) (holding that the regulatory balancing factors are only properly applied after the ALJ has determined that a treating-source opinion is not entitled to controlling weight).

In the present matter, the Court agrees with the Plaintiff and finds that the ALJ shortcut the process. Specifically, the ALJ did not explain whether Dr. McElligott's opinion was entitled to

controlling weight or give any indication that it was first assessed for controlling weight before moving into the regulatory balancing factors. [Tr. 21]. In other words, the ALJ failed to clarify whether the opinion was supported by medically acceptable techniques and not inconsistent with other credible evidence. Instead, after summarizing the opinion, the ALJ immediately assigned the opinion "limited weight" and went straight into the regulatory balancing factors in an effort to explain why the opinion was entitled to limited weight. [Tr. 21-23]. However, "these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight." Gayheart, 710 F.3d at 376.

The Commissioner concedes that the ALJ did not articulate the test for controlling weight, but argues that the treating physician rule was nonetheless satisfied because the ALJ provided "good reasons" why the opinion was only entitled to limited weight. [Doc. 22 at 12]. Because the ALJ provided "good reasons," the Commissioner submits that the Court is able to conduct a "meaningful review" of the ALJ's application of the treating physician rule. [Id. at 11]. The Plaintiff alleges that addressing the "supportability" and "consistency" regulatory balancing factors does not absolve the ALJ's violation because the decision cannot fulfill the "good reason" requirement if it is silent as to why a treating physician's opinion does not merit controlling weight. [Docs. 22 at 12-14, 23 at 2].

The Court observes that the failure to provide "good reasons" for not giving a treating source's opinion controlling weight hinders a meaningful review of whether the ALJ properly applied the treating-physician rule. Id. at 377. However, the Court need not remand the case if the violation is harmless error. A violation of the "good reason" rule can be deemed harmless error if:

> (1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings

12

> consistent with the opinion; or (3) where the Commissioner has met
> the goal of § [927(c)(2)] . . . even though she has not complied with
> the terms of the regulation.

Friend v. Comm'r of Soc. Sec., 375 F. App'x 543, 551 (6th Cir.2010) (citation omitted).  The Court finds that the third exception is applicable here.  Although the ALJ did not discuss whether Dr. McElligott's opinion was entitled to controlling weight before balancing the regulatory factors, the ALJ sufficiently explained what weight the opinion deserved and the reasons for that weight, which the Court finds is supported by substantial evidence and makes clear to subsequent reviewers the reason for the assignment of limited weight.

First, the ALJ observed that Dr. McElligott had only examined the Plaintiff on four occasions during a four-month period before rendering his opinion.  [Tr. 22].  The brief nature of the treating relationship is a factor that may undermine a treating physician's opinion.  See 20 C.F.R. § 416.927(c)(2)(i).  ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.").  Second, the ALJ considered the nature and extent of the treating relationship by observing that Dr. McElligott was the medical director of an occupational health clinic.  [Tr. 22].  In this regard, the Court observes that Dr. McElligott's treatment notes suggest that the Plaintiff was seen for the purpose of obtaining a functional evaluation rather than to establish long-term or routine medical care.  Indeed, the Plaintiff was only examined on four occasions and until Dr. McElligott was able to establish functional restrictions, and no extensive examinations or diagnostic testing was conducted.   [Tr. 796-97, 799-800, 802, 806]; see 20 C.F.R. § 416.927(c)(2)(ii) ("We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed.").

With regard to the supportability of the opinion and consistency of the opinion with the record as

13

a whole, the ALJ made a number of findings. As to Dr. McElligott's finding that the Plaintiff would be unable to complete an eight-hour workday, the ALJ noted that such a finding is not a medical opinion but an issue reserved for the Commissioner. See 20 C.F.R. § 416.927(d)(2) (opinions that amount to a finding that a claimant is "disabled" or "unable to work" are "opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case.").

The ALJ also observed that the opinion used form wording, such as words and phrases that included "he/she" and "physical and/or psychiatric condition" and provided no functional limitations, such as walking, sitting, manipulative, visual, communicative or environmental limitations, beyond the restriction against standing more than two hours in an eight-hour workday. [Tr. 22]. The ALJ observed that no analysis or explanation was given as to why the Plaintiff could only stand two hours. [Id.]. The ALJ reasonably noted that Dr. McElligott's opinion that the Plaintiff could not work without interruption due to her "physical and/or psychiatric condition" is confusing as "we do not know whether this is because of physical reasons and what they were, or if it is because of psychiatric reasons and what they were, as there is no explanation." [Id.].

Similarly, the ALJ noted that Dr. McElligott opined that the Plaintiff had been disabled since March 2000 without any explanation as to how the Plaintiff's impairments and standing limitation could be pinpointed to March 2000 when Dr. McElligott began treatment in July 2011. [Tr. 22-23]. As pointed out by the Plaintiff [Doc. 20 at 14 n.2], Dr. McElligott actually opined that the Plaintiff had been disabled since March 2010 [Tr. 797], not March 2000 which serves as the Plaintiff's alleged onset date. However, the Court finds the ALJ's misstatement in this regard harmless. Nothing within Dr. McElligott's opinion or treatment notes explain or provide a basis for concluding that the Plaintiff became disabled in March 2010. [Tr. 795-807]. The arbitrary

14

selection of March 2010 is particularly perplexing given the date Dr. McElligott began treating the Plaintiff which was July 18, 2011. Therefore, the ALJ's conclusion that "[i]t is difficult to see how Dr. McElligott could pin point the [disability] date so precisely" was reasonable. [Tr. 22]; see Allen v. Comm'r of Soc. Sec., 561 F.3d 646, 651 (6th Cir. 2009) (finding it proper to reject a treating physician's opinion as speculative regarding the claimant's symptoms for the two-year period before the physician first treated him).

Moreover, the ALJ noted that the record was void on any medical evidence from August 2013 through the hearing date of April 28, 2014. The ALJ permissibly observed that the lack of treatment indicated the possibility that the Plaintiff's impairments may not be as severe as alleged. [Tr. 23]; see Strong v. Soc. Sec. Admin., 88 F. App'x 841, 846 (6th Cir. Feb. 3, 2004) ("In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment. A failure to do so may cast doubt on a claimant's assertions of disabling pain.").[2] Further, the ALJ deferred to certain less restrictive limitations opined by consultative examiner Dr. Summers. [Tr. 23, 824]. Putting aside the challenges raised by the Plaintiff as to Dr. Summers's opinion, which the Court will address more fully below, a competing medical opinion from a non-treating source identified with other substantial evidence in the record may constitute "good reason" for declining to give a treating source's opinion greater deference. See Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 391 (6th Cir. 2004) (substantial evidence supported rejection of a treating physician's opinion that the

---

[2] The Plaintiff asserts that the "lack of treatment is a credibility factor which the ALJ had a duty to investigate before using it against Plaintiff." [Doc. 20 at 14]. Social Security Ruling 96-7p provides that "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide." 1996 WL 374186, *7 (July 2, 1996) superseded by Soc. Sec. Rul. 16-3p, 2016 WL 1119029, at *1 (effective Mar. 28, 2016, subsequent to the ALJ's decision). Neither the Plaintiff or the record, however, have offered any possible reason for failing to pursue treatment that would necessitate further inquiry by the ALJ before drawing an adverse inference.

15

claimant could stand or walk no more than two hours in an eight-hour workday where there were contrary medical opinions in the record and other substantial evidence). In addition, the ALJ found relevant the denial of the Plaintiff's previous application for SSI dated May 18, 2010, which alleged the same onset date – March 1, 2000 – as the current application now before the Court. [Tr. 23]. The ALJ found significant that the prior application was denied only five months before the current application was filed. [Id.].[3]

Finally, as to Dr. McElligott's specialization, the ALJ noted that Dr. McElligott was a medical doctor and that the record was void of any evidence that he had mental health training. [Tr. 23]. Although a physician's lack of mental-health specialization does not necessarily disqualify him from opining on a claimant's mental status, "It is well established that primary care physicians (those in family or general practice) identify and treat the majority of Americans psychiatric disorders." Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987). In this case, Dr. McElligott does not state what mental impairments specifically affect the Plaintiff's ability to work and why [Tr. 797], a fact recognized by the ALJ [Tr. 22]. Dr. McElligott noted that the Plaintiff had on-going treatment for anxiety and depression [Tr. 796], but beyond that notation, Dr. McElligott did not make any specific examination findings or conduct any diagnostic testing to justify a finding that the Plaintiff's "psychiatric condition" would interrupt the Plaintiff's ability work an eight-hour workday. Therefore, the ALJ's finding that Dr. McElligott's specialization did not render him qualified to opine on the limiting effects of the Plaintiff's mental condition constitutes "good reason."

_____

[3] In a footnote, the Plaintiff argues that "an opinion about an ongoing medical problem rendered five months before a claim is still relevant." [Doc. 20 at 14, n.2]. The Court does not disagree with the Plaintiff's contention, but the purpose of the ALJ's finding was with regard to when the Plaintiff's alleged disability began, not the ongoing nature of her medical problems.

16

The Plaintiff contends, however, that the ALJ's discussion of the "'supportability' and 'consistency' factors in the second step does not absolve an ALJ decision from ignoring the first step" and that although discussion of the regulatory balancing factors may provide understanding for the ultimate weight assigned, "reviewability does not save a decision that violates the rules." [Doc. 20 at 12]. The Plaintiff relies on <u>Gayheart</u> for the proposition that discussion of the regulatory balancing factors does not cure the ALJ's failure to first assess a treating physician's opinion for controlling weight. [<u>See</u> <u>id.</u>]. The reasons for ultimately finding reversible error in <u>Gayheart</u>, however, is distinguishable from the instant case. Not only did the ALJ in <u>Gayheart</u> fail to provide "good reason" for not giving the treating source's opinions controlling weight, the "modicum of reasoning" the ALJ did provide with regard to how the opinions should be weighed "fail to justify giving those opinions 'little weight.'" 710 F.3d at 377. For example, the ALJ cited to activities the Plaintiff engaged in as evidence that the mental impairments were not as severe as alleged. <u>Id.</u> However, the Court observed that the record did not support a finding that the claimant could perform the cited activities on a sustained basis and other examples of activities cited by the ALJ were found to be taken out of context as the result of focusing on isolated pieces of the record. <u>Id.</u>

In the present case, however, the reasons cited by the ALJ are supported by the record as detailed above. Moreover, the Plaintiff does not set forth any specific error regarding the reasons given by the ALJ except in a footnote in which the Plaintiff states, "it should be noted that some of the ALJ's Second Level findings are either wrong or inappropriate." [Doc. 20 at 14 n.2]. The Plaintiff then cites to the ALJ's misstatement regarding the year Dr. McElligott noted that the Plaintiff became disabled as well as the ALJ's citation to the Plaintiff's prior application for SSI [<u>Id.</u>], points which have been addressed above. The Plaintiff's generalized argument that the remaining reasons

17

given by the ALJ are "either wrong or inappropriate" is undeveloped and therefore waived.  See McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir.1997) (Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones).

Further, Sixth Circuit case law makes clear that violation of the treating physician rule may be harmless where "the ALJ's analysis meet[s] the goal of the rule even if not meeting its letter." Nelson v. Comm'r of Soc. Sec., 195 F. App'x 462, 470-72 (6th Cir. 2006); see Friend v. Comm'r of Soc. Sec., 375 F. App'x 543, 551 (6th Cir. 2010) ("If the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused."); Wilson, 378 F.3d at 547 ("[W]here the Commissioner has met the goal of § [927(c)](2)—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation," the ALJ's violation of the procedural requirement of § 927(c) is harmless).

In Nelson, although the ALJ did not articulate reasons why the treating sources' opinions were not entitled to controlling weight, the Sixth Circuit excused the error because

> the ALJ's discussion of the other record evidence about Nelson's mental impairments makes clear that the opinions of Drs. Cook and Peterson as to Nelson's limitations do not meet one of the two criteria for controlling weight:  that the opinion be consistent with the other record evidence as a whole. Drs. Cook and Peterson found considerable limitations on Nelson's work abilities, as detailed above.

Id. at 470-71.  Here, like Nelson, the reasons provided by the ALJ demonstrate that Dr. McElligott's opinion was inconsistent with other substantial evidence, thereby failing to meet the

second prong of the controlling-weight test.[4]  In other words, despite the ALJ's failure to first assess Dr. McElligott's opinion for controlling weight, the ALJ went on to provide "good reasons" for the weight assigned and the reasons cited by the ALJ leave the Court with a clear understanding of why Dr. McElligott's opinion was discredited and only assigned limited weight.

Therefore, the Court finds that the goal of § 416.927(c)(2) was met.  Accordingly, the Plaintiff's form over substance argument is unavailing.  "Even when considering claims alleging violation of the treating-source rule, we continue to believe that [w]hen remand would be an idle and useless formality, courts are not required to convert judicial review of agency action into a ping-pong game."  Hall v. Comm'r of Soc. Sec., 148 F. App'x 456, 463 (6th Cir. 2005) (internal quotations omitted).

### B.    Consultative Examiner

The Plaintiff also argues that the ALJ erred in his assessment of the opinions rendered by the consultative examiners of record.

The Court observes that opinions from non-treating sources are never assessed for "controlling weight."  Gayheart, 710 F.3d at 376.  In fact, opinions rendered by one-time consultative examiners are not due any special degree of deference.  Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994).  However, their opinions, like all medical opinions, must be considered.  20 C.F.R. § 416.927(c).  The Commissioner instead weighs these opinions based on the examining relationship (or lack

---

[4] The Plaintiff argues that none of the reasons cited by the ALJ consider whether Dr. McElligott's opinion is well-supported by medically acceptable clinical and diagnostic techniques and that the ALJ ignores the fact that Dr. McElligott based his opinion on the Plaintiff's diagnoses of acute idiopathic back pain, degenerative disc disease of the knees and ankles, and an ACL tear.  [Doc. 20 at 14].  The ALJ, however, did consider Dr. McElligott's diagnoses [Tr. 18-19] and although he did not discuss them in the context of the first prong under the controlling-weight test, a treating source's opinion must also meet the second prong which the ALJ did discuss albeit with regard to the regulatory balancing factors.  Moreover, "disability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it."  Hill v. Comm'r of Soc. Sec., 560 F. App'x 547, 551 (6th Cir. 2014).  Dr. McElligott's diagnosis alone does not explain the severity or functional effects of the Plaintiff's medical conditions as recognized by the ALJ.  [Tr. 22].

19

thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling. Gayheart, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)). Other factors which tend to support or contradict the opinion may be considered in assessing any type of medical opinion. Id. (quoting 20 C.F.R. § 404.1527(c)(6)).

### 1. *Jeffrey Summers, M.D.*

On May 27, 2014, Dr. Summers examined the Plaintiff and opined on her physical limitations. Dr. Summers provided a narrative report of the Plaintiff's work-related limitations [Tr. 819-22] and completed a form entitled "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" ("physical medical source statement") that provided work-related limitations in multiple-choice and short answer form. [Tr. 823-28]. Of relevance, Dr. Summers opined in his narrative report that the Plaintiff would have "difficulty . . . standing and walking for greater than 2 hrs. continuously or 4 hrs. in a single workday." [Tr. 822]. In the physical medical source statement, Dr. Summers opined that the Plaintiff could stand for two hours at one time without interruption and up to four hours total in an eight-hour workday, and she could walk for two hours at one time without interruption and stand for four hours total in an eight-hour workday. [Tr. 824].

The ALJ summarized Dr. Summers's narrative report and physical medical source statement and assigned "partial weight" to Dr. Summers's opinion. [Tr. 23]. However, the ALJ specifically agreed with the standing and walking limitations assessed. [Id.]. The ALJ's RFC determination limits the Plaintiff to light work and an ability to "stand and/or walk for six hours" in an eight-hour workday. [Tr. 17].

The Plaintiff argues that the RFC determination which limits the Plaintiff to six hours in which she can stand and/or walk is greater than the stand/walk limitation assessed by Dr. Summers.

20

[Doc. 20 at 16]. The Commissioner contends that the Plaintiff misreads Dr. Summers's opinion by focusing on the narrative report only and not the physical medical source statement which clarifies how long the Plaintiff can perform each activity. [Doc. 22 at 17-18].

The Court observes that Dr. Summers's finding in his narrative report, that the Plaintiff would have "difficulty standing and walking for greater than 2 hrs. continuously or 4 hrs. in a single workday," is somewhat ambiguous. It is unclear whether the Plaintiff can stand for four hours and then walk for another four hours, or whether the Plaintiff can only alternate between standing and walking for a combined total of four hours. However, the Court finds that the narrative report and the physical medical source statement must be read together and in doing so, the physical medical source statement clarifies the opinion expressed in the narrative report. The physical medical source statement expressly indicates that Dr. Summers was of the opinion that the amount of time the Plaintiff can stand is separate and distinct from the amount of time the Plaintiff can walk. [Tr. 824]. The physical medical source statement indicates that the Plaintiff can stand for two hours continuously and four hours total and can walk for another two hours continuously and four hours total. [Id.]. As such, the ALJ's RFC determination which limited the Plaintiff to six hours total which within she could stand and/or walk is not inconsistent with Dr. Summers's standing and walking limitation. [Tr. 17]. Therefore, the ALJ's RFC determination is also consistent with the definition of light work which "requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." Soc. Sec. Rul. 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983).

The Plaintiff also contends that Dr. Summers's opinion did not deserve more weight than Dr. McElligott's opinion because, according to the Plaintiff, Dr. Summers did not have a full picture of the Plaintiff's medical issues. [Doc. 20 at 15]. The Plaintiff argues that the absence of

any comments or notations by Dr. Summers concerning degenerative joint disease of the knees and ankles, as well as an ALC tear, demonstrates that Dr. Summers could not have reviewed the Plaintiff's medical file. [Id.]. In addition, the Plaintiff cites to Dr. Summers's notation that the Plaintiff "provided her own background information." [Id. (citing Tr. 819]). The Court, however, is not persuaded.

First, the Plaintiff's position requires speculation on the Court's part in that the Court would have to assume that Dr. Summers would make particular findings based on certain evidence. [See Doc. 20 at 15 ("Had [Dr. Summers] reviewed the record, he surely would have noted DJD in Plaintiff's ankles as well as both knees.")]. A consultative examiner is not bound by the findings made by other medical sources and instead must base his opinion on his own clinical impression given the evidence presented. Second, and as pointed out by the Commissioner [Doc. 22 at 15], Dr. Summers billed the agency for certain services, including "Record Review" [Tr. 817], which suggests that Dr. Summers was given necessary background information about the Plaintiff's condition. See 20 C.F.R. § 416.917.

Therefore, the Plaintiff's assignment of error is not-well taken.

### 2. *Ellen Denny, Ph.D.*

The Plaintiff also alleges that the ALJ did not properly assess the opinion of Dr. Denny who opined on the Plaintiff's cognitive and psychological limitations.

Dr. Denny conducted a consultative examination on June 3, 2014. [Tr. 808-16]. Dr. Denny opined on the Plaintiff's limitations in a narrative report and "Medical Source Statement of Ability to Do Work-Related Activities (Mental)" ("mental medical source statement"). [Id.]. Dr. Denny concluded that the Plaintiff suffered from Post-Traumatic Stress Disorder and Persistent Depressive Disorder, with anxious distress, early onset, with persistent depressive disorder,

22

moderate to severe. [Tr. 808, 812]. In relevant part, Dr. Denny opined in the mental medical source statement that the Plaintiff had a "marked" impairment in her ability to "respond appropriately to usual work situations and to changes in a routine work setting." [Tr. 814]. As to all other domains of functioning, Dr. Denny found that the Plaintiff had moderate, mild, or no limitations. [Tr. 812-14].

The ALJ gave "great weight" to Dr. Denny's opinion with regard to the diagnoses and all of the limitations assessed in the mental medical source statement except that the Plaintiff was markedly impaired in "responding appropriately to usual work situations and to changes in a routine work setting." [Tr. 26]. The ALJ reasoned that this particular limitation was not credible because it "appear[ed] to be based on the claimant's representations." [Id.]. The ALJ continued, "Nevertheless, I have accommodated the limitation in adaption by setting out in the RFC that the claimant can adapt to gradual changes." [Id.].

The Plaintiff argues that the ALJ's finding that the Plaintiff "can adapt to gradual changes" is inconsistent with Dr. Denny's "marked limitation and says nothing about adapting to ordinary work situations." [Doc. 20 at 19]. In addition, the Plaintiff argues that discounting the marked limitation because it appeared to be based on the Plaintiff's subjective allegations is not an appropriate basis to reject a mental limitation opined by a medical expert. [Id. at 19-20]. The Commissioner argues that limiting the Plaintiff to gradual changes sufficiently accounts for the Plaintiff's marked limitation and that an ALJ is free to reject limitations that are based solely on a claimant's self-report. [Doc. 22 at 19-20].

As an initial matter, the Court observes that the Sixth Circuit recently upheld an ALJ's assignment of less weight to the consultative examiner's opinion of a marked limitation in responding to work situations and changes, as the opinion was based on the claimant's subjective

23

reporting of symptoms and not supported by other objective evidence. <u>Staymate v. Comm'r of Soc. Sec.</u>, No. 16-3896, 2017 WL 902136, at *4 (6th Cir. Mar. 7, 2017). The Court reiterated that "[w]e have previously found reasoning that a medical opinion relied too heavily on the claimant's subjective complaints as adequate to support an ALJ's decision to give little weight to the opinion." <u>Id.</u> (citing <u>Keeler v. Comm'r of Soc. Sec.</u>, 511 F. App'x 472, 473 (6th Cir. 2013)); <u>see</u> <u>Kepke v. Comm'r of Soc. Sec.</u>, 636 F. App'x 625, 629 (6th Cir. 2016) ("Regardless of any inherent subjectivity in the field of psychiatry, a doctor cannot simply report what his patient says and re-package it as an opinion."). Thus, while it may be appropriate in some circumstances to reject a medical source's opinion where no other evidence would appear to support it aside from the claimant's subjective complaints, the Court finds that the present matter is distinguishable.

In the mental medical source statement, Dr. Denny identified the claimant's reports of difficulty going out in public and a tendency to have panic attacks as "factors" that supported her assessment. [Tr. 814]. However, Dr. Denny's narrative report indicates that she relied on more than the Plaintiff's subjective allegations in determining the Plaintiff's functional limitations. Specifically, Dr. Denny reviewed a prior psychological evaluation she had conducted in 2010, as well as letters from Tony Elkins, NP, and Ann Gallaher, LCSW, with Peninsula Hospital where the Plaintiff received mental health treatment in 2010 and 2011. [Tr. 808, 723, 762]. Ms. Gallaher's letter expresses the adverse impact, such as emotional regression and panic attacks, that a work environment could have on the Plaintiff. [Tr. 723]. These records, in addition to Dr. Denny's clinical interview and mental status examination, demonstrate that Dr. Denny did not rely solely on the Plaintiff's self-report in assessing the Plaintiff's ability to perform work-related activities as found by the ALJ.

The Court finds, however, the any error in the ALJ's reasoning for rejecting Dr. Denny's

24

marked limitation was harmless because the ALJ nonetheless "accommodated the limitations in adaption by setting out in the RFC that the claimant can adapt to gradual change." [Tr. 26]. While the Plaintiff argues that limiting the Plaintiff to gradual change fails to accommodate a marked limitation in adapting to ordinary work situations, the Plaintiff does not explain why or cite any supporting law or cases. Merely asserting that that the accommodation is inadequate fails to carry the Plaintiff's burden in demonstrating that the ALJ's RFC determination is not supported by substantial evidence. The Court observes that introducing changes on a gradual basis would assist a claimant who may otherwise not be able to adapt to ordinary work situations or changes in a routine work setting.

Accordingly, the Plaintiff's allegation is this regard is not well-taken.


## VI.    CONCLUSION

Based upon the foregoing, it is hereby **ORDERED** that the Plaintiff's Motion for Judgment on the Pleadings [**Doc. 19**] is **DENIED;** the Commissioner's Motion for Summary Judgment [**Doc. 21**] is **GRANTED;** the Commissioner's decision in this case denying plaintiff's application for benefits under the Social Security Act is **AFFIRMED**; and this case is **DISMISSED.**

Enter:

_____
**UNITED STATES DISTRICT JUDGE**